IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH AND SEIZURE OF A SEAGATE HARDRIVE (S/N: NA9TWKJT) CONTAINING DIGITAL EXTRACTIONS OF TWO CELLULAR PHONES, CURRENTLY LOCATED IN THE COMPUTER FORENSIC LABORATORY EVIDENCE ROOM AT HSI/D.C., 12200 SUNRISE VALLEY DRIVE, RESTON, VA 20191 | **UNDER SEAL**<br><br>Case No. 1:26-sw-141 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT**

I, Samantha Fisher, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION & AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device, described below and in Attachment A, that currently is in law enforcement possession within the Eastern District of Virginia, and the extraction from that property of electronically stored information for the particular items described in Attachment B.

2.      I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since February 2022.  I am currently assigned to the HSI Office of the Special Agent in Charge, Washington, D.C. ("HSI DC"), Child Exploitation Group. I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal distribution, receipt, transportation, possession, and access with intent to view of child pornography, in violation of 18 U.S.C. § 2252(a). I have received training in the area of child pornography and child exploitation, and I have had the opportunity to observe and review

numerous examples of child pornography, as defined in 18 U.S.C. § 2256(8), including computer media. Through my experience and training, I can identify child pornography when I see it. I have training and experience in the enforcement of the laws of the United States, including the preparation, presentation, and service of subpoenas, affidavits, search warrants, and arrest warrants. As a federal agent, I am authorized to investigate violations of laws of the United States and, as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

3. The facts and information in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. §§ 2252(a)(2) (receipt and/or distribution of child pornography) and 18 U.S.C. §§ 2252 (a)(4)(B) (possession of child pornography) have been committed by Roni MENDEZ ESCOBAR. I further submit that there is probable cause to search two forensic extractions of cellular phones belonging to Roni MENDEZ ESCOBAR (which are located on a Seagate hard drive located in the Homeland Security Investigations, D.C. Office Computer Forensic Laboratory, 12200 Sunrise Valley Drive, Reston, Virginia 20191), as further described below and in Attachment A, for evidence, instrumentalities, contraband, and/or fruits of these crimes as further described in Attachment B.

## IDENTIFICATION OF DEVICE TO BE EXAMINED

5.      The property to be searched, as further described in Attachment A, includes a blue, Seagate Hard Drive with serial number, NA9TWKJT (hereinafter referred to an "the Device"), containing forensic extractions from two cellular phones.

6.      The Device is located in the computer forensic lab evidence room, within the Homeland Security Investigations Office, 12200 Sunrise Valley Drive, Reston, VA 20191, within the Eastern District of Virginia.

7.      The applied-for warrant would authorize the forensic examination of the device and the review of the extractions contained on it, as described in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATUTORY AUTHORITY

8.      I know that Title 18, United States Code, Section 2252(a)(2) and (b)(1) prohibit the knowing receipt or distribution of any visual depiction of minors engaging in sexually explicit conduct that has been mailed or shipped or transported in or affecting interstate or foreign commerce, by any means, including by computer.

9.      I know that Title 18, United States Code, Sections 2252(a)(4)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any visual depiction that has been mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including

by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct.

10.    "Minor," I know, is defined in 18 U.S.C. § 2256(1) as any person under the age of eighteen years.

11.    I know that "child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

12.    I know that "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

13.    I know that "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

14.    "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions.

4

## PROBABLE CAUSE

15.     On April 6, 2025, registered electronic service provider WhatsApp Inc. reported to the National Center of Missing and Exploited Children (NCMEC) that a WhatsApp user had sent a message offering or seeking child pornography. The content of that message reads as follows:

> *☪�―Unete al mejor grupo❧con todos los☞●◖◗●◖❧Packs CP y MORRITAS☺ EN LÍNEA para☺tener chat♔♡y video llamada AHORA☪·* ↓ ↓ ↓ ↓ ↓ ↓ ↓    https://wlhatt.life/morritas-cp/

16.     The message, originally written in Spanish, translates to "Join the best group with all the CP packs and young girls who are online to chat and video call right now." There was also a link provided in the message. WhatsApp Inc identified the phone number associated with the account as 202-393-9048 (the "subject number") and the email associated with the account as ronimendez.com@gmail.com (the "subject email").

17.     After receiving and reviewing WhatsApp's submission, NCMEC created CyberTipline Report 208693789, which contained the reported information and automated information added by NCMEC systems (including IP geolocation data). NCMEC transmitted this report to Virginia State Police, and Fairfax County Detective Claudia Castro was assigned to investigate the tip.

18.     On July 2, 2025, NCMEC received an additional CyberTipline Report, 215251320, which was based on another WhatsApp submission with the same suspect phone number and email address. This time, WhatsApp Inc. reported that on or about July 1, 2025, the account disseminated child pornography over servers belonging to WhatsApp Inc.

19.     WhatsApp indicated that the suspect account uploaded two video files, identified as   y6WjVbhJCJhCr6C8510455066_1302061431354149_3302395672975309589_n.mp4   and pXITTLtRWpQfc2Ga510253165_2032955564130513_8048197964073073133_n.mp4.

WhatsApp stated that an employee or contractor had viewed the entirety of first video file, but not the second.

20.    NCMEC matched the provided phone number to a prepaid cell phone associated with customer information for "RONY MENDEZ SILVER SPRING, MD 20902."  NCMEC also listed IP address information associated with the suspect account, including that the IP address was associated with internet service provider Boost Mobile.

21.    NCMEC made its second CyberTipline Report to Virginia State Police available July 9, 2025, and it was forwarded to Detective Castro for further review.

22.    On September 23, 2025, Detective Castro submitted legal process to Boost Mobile for the subject number, 202-393-9048. On October 15, 2025, Boost Mobile responded, through its registered agent for subpoenas, Subsentio, and identified the subscriber of the phone number as Rony Mendez, with the address 6004 Argyle Drive, Apt 1, Falls Church, VA 22041. The activation date for this account was March 25, 2025, and the subject number was assigned to the account that same day.  Mendez was still listed as the subscriber of the active account when Subsentio issued the subpoena return on October 15, 2025.

23.    On October 22, 2025, a Fairfax County Magistrate authorized a residential search warrant for 6004 Argyle Drive, Apt 1, Falls Church, VA 22041, authorizing Fairfax Detective Claudia Castro to search for and seize electronic devices which contain evidence of a violation of Code of Virginia Section 18.2-374.1:1 (possession and/or distribution of child pornography).

24.    On October 23, 2025, a Fairfax County tactical team executed the residential search warrant at 6004 Argyle Drive, Apt 1, Falls Church, VA 22041. At the time of the search warrant, three adult males, and one adult female were present. Roni MENDEZ ESCOBAR presented himself as the owner of the apartment and identified his and his wife's shared bedroom. MENDEZ

6

ESCOBAR stated he had multiple cellphones located in his bedroom, none of which contain passcodes and only one of which belonged to his wife. He described his wife's cellphone as the one in an orange phone case. For that reason, law enforcement did not seize the cellphone in an orange case, instead only seizing a Motorola phone and a TCL phone, both of which belonged to MENDEZ ESCOBAR.

25.    After seizing the Motorola phone and TCL phones, law enforcement brought the two phones to the Fairfax County Police Department and logged them into evidence. Both cellphones are currently still located in the Fairfax County Police Department evidence room.

26.    On November 06, 2025, Fairfax County police officers arrested MENDEZ ESOCAR based on the additional charges of possession of child pornography. At the time of the arrest, MENDEZ ESCOBAR was in possession of a OnePlus cell phone which was seized and entered into property at Fairfax County Police Department.

27.    The Motorola cellphone and TCL cellphone are currently stored in evidence at the Fairfax County Police Department within the Eastern District of Virginia, where they have remained seized since their seizure.   The phones were all extracted pursuant to Fairfax County search warrants, and the extractions are currently located on a Seagate hard drive (the "Device" described earlier in this affidavit) in the Computer Forensic Laboratory Evidence Room at Homeland Security Investigations' D.C. Office, 12200 Sunrise Valley Drive, Reston, Virginia 20191, within the Eastern District of Virginia.  In an abundance of caution, I have yet to review those extractions pending the authorization of this search warrant.

## CHARACTERISTICS COMMON TO INDIVIDUALS WHO POSSESS AND DISTRIBUTE CHILD PORNOGRAPHY

28.    Based on my previous investigative experience related to child exploitation

investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who possess and distribute child pornography:

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, books, and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Such individuals almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, videos, magazines, photographs, correspondence, mailing lists, books, etc., in the privacy and security of their home. Individuals who have a sexual interest in children or images of children typically retain their pictures, videos, photographs, magazines, correspondence, mailing lists, books, and child erotica for many years.

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and cellular phone. These child pornography images are often maintained

for many years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly.

e.  Child pornography images and videos can be downloaded onto desktop or laptop computers, computer disks, hard drives, flash drives, system disk operating systems, Internet-capable devices, cellular telephones, tablets, iPads, digital music players, and a variety of other electronic data storage devices. Individuals with a sexual interest in children often transfer child pornographic material to multiple electronic devices because of its value to them and/or to create additional storage space for their collections. Additionally, because persons who collect child pornography are often compulsive about this activity, they frequently use multiple electronic devices throughout a home to access material depicting children or to communicate with children, especially when they have resided in the same place for a long period of time. Even if an individual does not intentionally transfer material for purposes of storage, the child pornography material, web history, communications, and other relevant evidence will likely still be located on multiple devices in their possession because, for example, of the frequency of "backing up" or "synching" mobile phones to computers or other digital devices.

f.  Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses (including email

9

addresses), and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. Such correspondence may take place, for example, through online bulletin boards and forums, Internet-based chat messaging, email, text message, video streaming, cellular telephone, and in person.

g.  Moreover, persons who possess and distribute child pornography typically use the Internet to search for materials or information about the age group they are most interested in. They may also communicate directly with minors via social media, text message, phone calls, or email.

h.  Such individuals prefer not to be without their child pornography for any prolonged time period. The nature of these materials, their attraction to the content within them, and the risk involved with their possession of such materials, motivate them to keep the materials within their possession and control wherever they go. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

i.  In this case, MENDEZ ESCOBAR was on social media platforms distributing child pornography. He also engaged in activity relating to the exploitation of minors on more than one occasion. Based on this activity, your affiant believes that MENDEZ ESCOBAR is a collector of child pornography and is likely to have evidence of his collections on his cellular phones.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

29.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

10

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

30. There is probable cause to believe that things that were once stored on the Devices (the cellular phones and their extractions) may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

11

d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

31.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the cell phones because:

e.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created.

f.     As explained herein, information stored within the Devices may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and

12

anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g.,

13

running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

g.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

h.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

i.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

j.      I know that when an individual uses an electronic device to obtain child pornography or child abuse materials over the internet, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used, data that was sent or received, and other records that indicate the nature of the offense.

32.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the extractions of the two cellular phones consistent with the warrant.

33.    *Manner of execution.*    Because this warrant seeks only permission to examine extractions of electronic devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

34.     Based on the information set forth above, I submit that this affidavit supports probable cause to believe that the two digital extractions located on the Device contain or constitute evidence, fruits, instrumentalities, and/or contraband related to violations of 18 U.S.C. § 2252.  I therefore request that the Court issue the proposed search warrant authorizing the examination of the extractions located on the Seagate Device described in Attachment A in order to seek the items described in Attachment B.

Respectfully submitted,

SAMANTHA J FISHER
Digitally signed by
SAMANTHA J FISHER
Date: 2026.02.23 12:35:29
-05'00'

Samantha Fisher
Special Agent
Homeland Security Investigations

Subscribed and sworn to in accordance with
FED. R. CRIM. P. 4.1 by telephone on
February 23, 2026.

The Honorable William B. Porter
United States Magistrate Judge
Alexandria, Virginia

16

## ATTACHMENT A

### *Property to be searched*

The property to be searched is a blue Seagate hard drive bearing serial number NA9TWKJT that is located at the Homeland Security Investigations, D.C. Office Computer Forensic Laboratory, 12200 Sunrise Valley Drive, Reston, Virginia 20191, within the Eastern District of Virginia. The hard drive contains digital extractions of the Motorola cell phone and TCL cellphone seized from MENDEZ-ESCOBAR's residence on October 23, 2025. This warrant authorizes the forensic examination of the digital extractions thereof for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### *Property to be seized*

All records and information on the extractions located on the Seagate hard drive, described in Attachment A that relate to violations of Title 18, United States Code, Section 2252—specifically, relating to the distribution and possession of child pornography—including:

1.    Child pornography, visual depictions of minors engaging in sexually explicit conduct, and child erotica or sexualized depictions of children;

2.    Any and all records, information, documents, images, videos, communications, emails, email software, associated email addresses, email address book contents, internet history, browsing history, internet search history, cookies, deleted files, bookmarked and favorite web pages, user typed web addresses, desktop shortcuts, path and file names for files opened through any media and/or image viewing software, anonymizing software, encryption software, chat software, chat files, chat logs, chat names used, peer to peer software, peer to peer files, contact lists, newsgroup postings by the user, IP addresses assigned, access logs, and any other evidence pertaining to:

    a.    Evidence of communication with any minor or minors, information that would assist in identifying those minors, including any images and photographs of children that are or are not sexually explicit;

    b.    Images and videos of child pornography, as defined by 18 U.S.C. § 2256, or child erotica, and any information that would assist in identifying minors depicted in such material;

    c.    Engaging in sexually explicit activity with children, or the desire or attempt to do

the same by the defendant or any other individual;

d.  Textual descriptions of sexually explicit conduct with minors;

e.  Who used, owned, or controlled the cell phones, including evidence that could help reveal the whereabouts of such person(s);

f.  How and when the cell phones were accessed or used, to determine the geographic and chronological context of access, use, and events relating to the crime under investigation and to the owner or user of the cell phones;

g.  The state of mind of the person who used the cell phones as it relates to the crime under investigation;

h.  Records or information concerning IP addresses used by the cell phones;

i.  Correspondence or communications, such as electronic mail, chat logs, and electronic messages;

j.  Internet usage records, user names, logins, passwords, e-mail addresses and identities assumed for the purposes of communication on the Internet, billing, accounts, and subscriber records, chat room logs, chat records, membership in online groups, clubs or services, connections to online or remote computer storage, and electronic files;

k.  Shared images, "friends lists" and "thumbnails"; and

l.  child pornography, visual depictions of minors engaged in sexually explicit conduct, and child erotica or sexualized depictions of children

3.  Records and information relating to the use of peer-to-peer file-sharing programs or networks;

4.      Evidence of user attribution showing who used or owned the cell phones at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

5.      Evidence of software that would allow others to control the cell phones, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

6.      Evidence of the lack of such malicious software;

7.      Evidence indicating how and when the cell phones were accessed or used to determine the chronological context of the cell phones' access, use, and events relating to the crimes under investigation and to the cell phones' user(s);

8.      Evidence indicating the state of mind of the user(s) of the cell phones as it relates to the crimes under investigation;

9.      Evidence of the attachment to the cell phones of other storage devices or similar containers for electronic evidence;

10.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cell phones;

11.      Evidence of the times the cell phones were used;

12.      Records of or information about Internet Protocol addresses used by the cell phones;

13.      Records of or information about the cell phones' Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

4

14.    Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

If the government identifies seized materials, that are potentially attorney-client privileged or subject to the work product doctrine ("protected materials"), the Prosecution Team will discontinue review until a Filter Team of government attorneys and agents is established. The Filter Team will have no future involvement in the investigation of this matter. The Filter Team will review seized communications and segregate potentially protected materials, i.e. communications that are to/from an attorney, or that otherwise reference or reflect attorney advice. At no time will the Filter Team advise the Prosecution Team of the substance of any of the potentially protected materials. The Filter Team then will provide all communications that are not potentially protected materials to the Prosecution Team and the Prosecution Team may resume its review. If the Filter Team concludes that any of the potentially protected materials are not protected (*e.g.,* the communication includes a third party or the crime-fraud exception applies), the Filter Team must obtain either agreement from defense counsel/counsel for the privilege holder or a court order before providing these potentially protected materials to the Prosecution Team. Absent unusual circumstances, the government will provide the putatively protected documents to the privilege holder if and when they are provided to the court for further action. If possible, government attorneys will engage with the privilege holder to resolve privilege determinations before proceeding to court for judicial review.

5